# United States Court of Appeals
# for the Federal Circuit

---

**PLANTRONICS, INC.,**
*Plaintiff-Appellant,*

v.

**ALIPH, INC.** AND **ALIPHCOM, INC.,**
*Defendants-Appellees.*

---

2012-1355

---

Appeal from the United States District Court for the Northern District of California in No. 09-CV-1714, Magistrate Judge Bernard Zimmerman.

---

Decided: July 31, 2013

---

KARA F. STOLL, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for plaintiff-appellant. With her on the brief was JASON W. MELVIN. Of counsel on the brief were DAVID C. BOHRER, Confluence Law Partners, of San Jose, California, and BRUCE G. CHAPMAN, Connolly Bove Lodge & Hutz LLP, of Los Angeles, California.

ROBERT P. FELDMAN, Quinn Emanuel Urquhart & Sullivan, LLP, of Redwood Shores, California, argued for

defendants-appellees. With him on the brief were DANIEL H. BROMBERG and DANE W. REINSTEDT.

———————————

Before RADER, *Chief Judge,* O'MALLEY, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

In this patent infringement case, Plantronics, Inc. ("Plantronics") filed suit alleging that Aliph, Inc. and Aliphcom, Inc.'s (collectively, "Aliph") products infringe U.S. Patent No. 5,712,453, entitled "Concha Headset Stabilizer" (the "'453 patent"). On March 23, 2012, the district court granted-in-part Aliph's motion for summary judgment of noninfringement and invalidity, construing certain disputed terms, finding in relevant part that the accused products do not infringe claims 1 and 10, and holding the asserted claims invalid as obvious. *Plantronics, Inc. v. Aliph, Inc.*, No. C09-1714BZ, 2012 WL 994636, at *12 (N.D. Cal. Mar. 23, 2012) ("Summ. J. Decision"). The district court's decision is reversed in part, vacated in part, and remanded for further proceedings.

BACKGROUND

The '453 patent is directed to a concha-style headset for transmitting received sounds to the ear of a user, *e.g.*, headsets used with cell phone receivers. '453 patent col. 1 ll. 13–16. In particular, the patent discloses an apparatus for stabilizing a concha style headset during use. *Id.* col. 2 ll. 56–63. Because the claimed apparatus requires some familiarity with the human ear, an illustration is provided below:



**FIGURE 3**

*Id.* fig. 3. Of particular relevance is the concha, "a deep cavity containing the entry to the ear canal," and which is divided into the upper and lower concha, 43 and 41. '453 patent col. 4 ll. 50–52.

Prior art headset stabilizers included large supports outside the ear or relied on appendages to hook onto the crux of the helix 31. *Id.* col. 1 ll. 20–55. The '453 patent purports to improve upon prior art headset stabilizers. In particular, the claimed headset consists of "a receiver attachment that couples to the body of the receiver, a support member extending from the receiver attachment, and a concha stabilizer pad coupled to the end of the support member such that the concha stabilizer pad contacts the upper concha under the antihelix of the ear with the receiver placed in the lower concha in front of the ear canal." *Id.* at [57]. Thus, the concha stabilizer pad has three points of contact: the tragus, the anti-tragus, and the upper concha. *Id.* col. 2 ll. 2–6. Certain embodiments of the claimed concha stabilizer are depicted below:



**FIGURE 1A**        **FIGURE 1B**

*Id.* figs 1A, 1B.

The stabilizing concha style headset is described as typically including a receiver 27 and a voice tube 30. *Id.* col. 2. ll. 64–65. A receiver attachment comprises an ear cushion 11 preferably dimensioned as an oblate spheroid, formed of a reticulated, fully open-pore flexible, ester type polyurethane foam. *Id.* col. 2 l. 66–col. 3 l. 2. The ear cushion 11 has an open central recessed portion 13 forming a "C" shape, which is dimensioned to fit snugly onto the receiver 27. *Id.* col. 3. ll. 6–9. A flexible support member, stabilizer support 17, extends from the upper surface of the ear cushion 11. *Id.* col. 3 ll. 18–19. The end of the stabilizer support 17 is coupled to a concha stabilizer pad 21 which contacts the upper concha 43 beneath the antihelix. *Id.* col. 3 ll. 26–28. When placed into the lower concha 41 during use, the ear cushion 11 contacts the tragus 35 and the antitragus 39 at a tragus contact point 23 and an antitragus contact point 25, respectively, where the face 15 of the ear cushion 11 rests in the lower concha 41 and faces toward the ear canal 33. *Id.* col. 3. ll. 9–14. The left/right orientation of the tragus contact point 23 and the antitragus contact point 25 with respect

to the face 15 of the ear cushion 11 is reversed for the left and right ears. *Id.* col. 3 ll. 14–16.

Independent claim 1 is representative of the asserted claims:

> 1. An apparatus for stabilizing a headset including a receiver sized to fit between a tragus and an anti-tragus of an ear, the apparatus comprising:
>
> an ear cushion dimensioned to cover a portion of the receiver disposed between the tragus and the anti-tragus;
>
> a resilient and flexible *stabilizer support member* coupled to the ear cushion, and dimensioned to fit within an upper concha with the ear cushion coupled to the receiver and the receiver disposed between the tragus and the anti-tragus; and
>
> a concha stabilizer pad coupled to the *stabilizer support member*, for contacting the upper concha.

'453 patent col. 5 ll. 10–22 (emphases added). Independent claim 10 is also relevant here and is recited below:

> 10. A headset comprising:
>
> a receiver sized to fit between a tragus and an antitragus of an ear, the receiver having a tragus contact point, and an anti-tragus contact point disposed substantially opposite to the tragus contact point;
>
> an ear cushion dimensioned to cover a portion of the receiver; and
>
> a *concha stabilizer* coupled to the ear cushion and dimensioned to contact an upper concha between an antihelix and a crux of a helix with the receiver disposed between the tragus and the antitragus.

*Id.* col. 6 ll. 5–14 (emphasis added).

On January 15, 2009, Plantronics filed the underlying patent infringement suit against Aliph originally asserting claims 1, 7, 10 and 11.  Subsequently, on November 9, 2009, Aliph requested *ex parte* reexamination by the U.S. Patent and Trademark Office ("PTO") of the asserted claims, which the PTO granted.  As a result, the district court litigation was stayed.  In its request for reexamination, Aliph argued that the asserted claims were invalid as anticipated and obvious in view of four prior art references: (1) U.S. Patent No. 1,753,817 to Aber ("Aber"); (2) U.S. Patent No. 1,893,143 to Koch ("Koch"); (3) U.S. Patent No. 4,720,857 to Burris *et al.* ("Burris"); and (4) Japanese Application Publication No. JP58-104077 to Watanabe ("Watanabe").  On March 1, 2011, the PTO issued a reexamination certificate confirming the patentability of the challenged claims along with the addition of dependent claims 16–56.  Plantronics thereafter amended its infringement contentions to assert new claims 18, 20–21, 25–26, and 28–56 in addition to the originally asserted claims 1, 7, 10, and 11 (collectively, "asserted claims").

On September 19, 2011, the district court issued a tentative claim construction order, and held its *Markman* hearing on September 21, 2011.  On October 6, 2011, the district court issued its claim construction order construing, in relevant part, the terms "stabilizer support member" in claim 1 and "concha stabilizer" in claim 10.  *Plantronics, Inc. v. Aliph, Inc.*, No. C09-1714BZ, 2011 WL 4634066, at *4 (N.D. Cal. Oct. 6, 2011).  On March 23, 2012, the district court granted summary judgment, holding the asserted claims were invalid and not infringed.

In its summary judgment decision, the district court provided further construction of a "stabilizer support member" and "concha stabilizer," and in turn, found no infringement of claims 1 and 10.  Likewise, the district

court held claims 1, 7, 10, 11, 18, 20, 21, 26, 28, 30, 43 and 44 of the '453 patent were invalid as obvious in light of the combination of U.S. Patent No. 1,893,474 ("Lieber") with Japanese Utility Patent Application No. 60–40187(U) ("Komoda"). Furthermore, the district court determined that dependent claims 25, 29, 31–42 and 45–56 were obvious by the combination of the Lieber patent, the Komoda patent and U.S. Patent No. 5,048,090 ("Geers"). Plantronics appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Plantronics raises the following issues: (1) whether the district court improperly construed the terms "stabilizer support member" in claim 1 and "concha stabilizer" in claim 10; (2) whether the district court erred in granting summary judgment of noninfringement; and (3) whether the district court erred in granting Aliph's motion for summary judgment of obviousness. These issues are addressed seriatim.

### 1. The District Court Erred in Construing the Terms "Stabilizer Support Member" and "Concha Stabilizer" When it Limited Them to "Elongated" Structures

We review a district court's claim construction *de novo. Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–55 (Fed. Cir. 1998) (en banc). To ascertain the scope and meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and, if necessary, any relevant extrinsic evidence. *Chicago Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, 677 F.3d 1361, 1366 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315–17 (Fed. Cir. 2005) (en banc)).

The district court construed "stabilizer support member" as "an elongated structure that extends from the ear cushion to the concha stabilizer pad and stabilizes the headset" and construed "concha stabilizer" as "an elongated stabilizing structure, which extends between the ear cushion and the upper concha." Summ. J. Decision, 2012 WL 994636, at *3. In its summary judgment decision, the district court clarified the meaning of "elongated" as "longer than it is wide." *Id.* Thus, the district court placed a narrowing structural limitation to the claims with its construction of "elongated" to mean "longer than it is wide."

Plantronics contends that the district court's construction improperly imported a limitation to the claims from the specification, and proposes that these terms require a structure that simply "extends from something else." Aliph, on the other hand, agrees with the district court's construction. Aliph argues that because Plantronics, during prosecution, elected a species of the invention that is limited to "elongated" structures, a "stabilizer support member" and a "concha stabilizer" must be "elongated" and that "elongated" means "longer than it is wide." Upon review of the claim language, the specification, and the prosecution history of the '453 patent, the district court's construction limiting the "stabilizer support" and "concha stabilizer" to a structure that is "elongated" and "longer than it is wide" is reversed. Those terms require a meaning that is not as limiting as the district court imposed.

The asserted claims are drafted broadly, without bounds to any particular structure. Specifically, claim 1 recites a "stabilizer support" as "dimensioned to fit within an upper concha with the ear cushion coupled to the receiver [which is] disposed between the tragus and the anti-tragus." '453 patent col. 5 ll. 17–20. In addition, claim 10 recites a "concha stabilizer . . . coupled to the ear cushion and dimensioned to contact an upper concha

between an antihelix and a crux of a helix with the re-
ceiver disposed between the tragus and the anti-tragus. . .
.” '453 patent col. 6 ll. 12–15. Thus, while the claims are
instructive as to the general dimensions of a "stabilizer
support" and a "concha stabilizer," they do not require any
particular structure, *e.g.*, one that is longer than it is
wide. *Phillips*, 415 F.3d at 1312–13 (providing for a
presumption that claim terms are to be given their ordi-
nary and customary meaning).

Like the claim language, the specification of the '453
patent does not limit the claimed apparatus to any par-
ticular structure. Aliph claims support in a portion of the
specification referring to the "stabilizer support" as a
member that is "elongated." '453 patent col. 2 l. 14. In the
very next paragraph, however, the "stabilizer support" is
described alternatively as an "arch" or a "torus" ring-
shaped structure. *Id.* col. 2 ll.19–29. Hence, limiting the
"stabilizing support member" and "concha stabilizer" to an
"elongated" structure that is "longer than it is wide"
would improperly limit the broadly drafted claims to one
preferred embodiment (thereby excluding others) or would
be the result of improperly importing a limitation from
the specification into the claims. *Kara Tech. Inc. v.
Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009)
("The patentee is entitled to the full scope of his claims,
and we will not limit him to his preferred embodiment or
import a limitation from the specification into the
claims.").

Contrary to Aliph's argument, the prosecution history
of the '453 patent does not salvage its position. Specifical-
ly, Aliph argues that the prosecution history makes clear
that the stabilizer elements are "elongated" structures.
Aliph bases its contention on the PTO-initiated restriction
requirement during prosecution in which Plantronics was
instructed to elect among what the PTO viewed as multi-
ple inventions. *See* 35 U.S.C. § 121 ("If two or more inde-
pendent and distinct inventions are claimed in one

application, the Director may require the application to be restricted to one of the inventions."). Plantronics abandoned that application and subsequently filed a second similar patent application. The PTO again issued a restriction requirement, finding four patentably distinct inventions in: (1) Figures 1A/1B; (2) Figure 2A; (3) Figure 2B; and (4) Figure 2C. Accordingly, the PTO directed Plantronics to elect "a single disclosed species for prosecution on the merits to which the claims shall be restricted if no generic claim is finally held to be allowable." J.A. 380. The PTO also concluded that the application presented no "generic claim" covering more than a single species of the invention. In response, Plantronics "elect[ed], without traverse, to prosecute" only the "Species of Figures 1a and 1b." J.A. 384. Plantronics indicated that "[c]laims 1–6 and 9–12 read on the elected species . . . . Claim 11 is generic." *Id.* This application was eventually issued as the '453 patent on January 27, 1998. Because Plantronics elected to prosecute the species of Figures 1A and 1B, Aliph proposes that the asserted claims must be limited to the disclosures and embodiments pertaining to Figures 1A and 1B—effectively carving out disclosures related to the arch-shaped and torus-shaped structures of the "stabilizing support" and limiting the "stabilizing support" to disclosures describing an "elongated" structure. In other words, Aliph avers that the claims should be limited to the single invention depicting a single embodiment having one "elongated" structure as Plantronics elected to pursue.

"[P]rosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317. When narrowing claim scope, as here, this court has recognized that a "clear and unmistakable" disavowal during prosecution overcomes the

"'heavy presumption' that claim terms carry their full ordinary and customary meaning." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323, 1326 (Fed. Cir. 2003); *see also Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1334 (Fed. Cir. 2009) ("A heavy presumption exists that claim terms carry their full ordinary and customary meaning, unless [a party] can show the patentee expressly relinquished claim scope."). Thus, when the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered. *Phillips*, 415 F.3d at 1317. Plantronics' election of species of Figures 1A and 1B did not amount to such a surrender of claim scope.

The PTO's restriction requirement did not suggest that the different inventions it found were based on differences in structure (*i.e.*, "elongated" versus an "arch"). Indeed, the PTO found four patentably distinct inventions in the figures of the '453 patent without providing any reasons why in its view the application presented differing inventions. Likewise, other figures of the '453 patent depicting other unelected species of the invention also reveal a "stabilizer support" that appears "elongated," which refutes Aliph's contention that the restriction requirement was based on that structural difference. The election of an invention in response to an ambiguous restriction requirement in turn cannot be said to provide any guidance forming a basis for narrowing a broadly drafted claim. *Omega Eng'g*, 334 F.3d at 1325 (We have "consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope."). Neither the PTO nor Plantronics made any particular remarks regarding the differences (*e.g.*, in structure) of what the PTO found to be different inventions, and while Plantronics elected without traverse the invention of Figures 1A and 1B, Plantronics did disagree

with the PTO's comments on claim 11 when it responded that claim 11 is a generic claim that read on all the embodiments illustrated in the application. This exchange with the PTO thus does not amount to anything clear or unambiguous to disclaim claim scope otherwise encompassed by the broadly drafted claims.

Even without the election, Aliph contends each of the species of invention, both elected and unelected, illustrates stabilizer members that are "elongated." "Patent drawings [however] do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000); *see also In re Wright*, 569 F.2d 1124, 1127 (C.C.P.A. 1977) ("Absent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value."); Manual of Patent Examining Procedure 2125 ("Proportions of features in a drawing are not evidence of actual proportions when drawings are not to scale."). Because the figures in the '453 patent do not evidence actual dimensions of the "stabilizer support" and the "concha stabilizer," they cannot be relied upon to argue that the disputed terms should be limited to a particular structure.

Aliph cites *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1378 (Fed. Cir. 2006), *rev'd on other grounds by Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), and *Acco Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1079 (Fed. Cir. 2003), for support; these cases are distinguishable. In both cases, during claim construction, the district court considered the patentee's election of an invention in response to a PTO restriction requirement. In *LG Electronics,* the defendants proposed a narrowing construction of a disputed claim term arguing that the patentee disavowed the use of "valid/invalid bits" by pointing to por-

tions of the specification that contemplated never using "valid/invalid bits." 453 F.3d at 1377. We held that: (1) the claims were drafted broadly, without consideration of using or not using "valid/invalid bit"; (2) the specification disclosed varying embodiments, including those that used and did not use "valid/invalid bits," and limiting the claims to any one of these embodiments would be improper; and (3) even though the specification disclosed embodiments that never used "valid/invalid bits," defendant cannot point to those disclosures to show disavowal because they were directed to unelected portions of the invention. *Id.* at 1377. In *Acco Brands*, after holding that the patentee disclaimed claim scope during reexamination we determined that embodiments containing the disclaimed limitation were only relevant to other unelected portions of the specification, which were claimed in other related patents and could not be used to recapture and broaden claim scope that was disclaimed during reexamination. *Id.* at 1079.

This case differs from *LG Electronics* and *Acco Brands*. The PTO's restriction requirement here did not clearly demarcate the actual differences among the species of inventions, as was done in *LG Electronics* and *Acco Brands*. Regarding the restriction requirement imposed in *LG Electronics*, the PTO required the patentee to elect one of two identified inventions in the application, and the limitation at issue (never using "valid/invalid bits") was found to be relevant only as to the first unelected invention and not to the second elected invention. 453 F.3d at 1378. In *Acco Brands*, it was also made clear that certain embodiments were claimed in other patents, and that the patent at issue was directed to one particular figure/embodiment. 346 F.3d at 1079.

As discussed, the PTO here found four patentably distinct inventions in the figures of the '453 patent without providing any reasons why these figures represented differing species. We cannot discern from the correspond-

ence between the PTO and Plantronics whether the "stabilizer support member" and the "concha stabilizer" were interpreted by any party to contain particular structural limitations. Given these ambiguities, there is no basis to limit the broadly drafted claims at issue.[1]

The "stabilizer support member" and the "concha stabilizer" are not structurally limited either in claim language or in their corresponding description in the specification. Likewise, the election of species pertaining to Figures 1A and 1B in response to the restriction requirement does not narrow the claim scope, because the election was made without any indication that the "stabilizer support" and the "concha stabilizer" to one that is "longer than [they are] wide." Because the patent supports broader constructions, the "stabilizer support member" is construed to mean "a structure that extends from the ear cushion to the concha stabilizer pad and stabilizes the headset," and "concha stabilizer" is construed to mean "a stabilizing structure dimensioned to extend between the ear cushion and the upper concha." Since the district court's claim construction is reversed, its finding of no

---

[1] Even if this court were to limit the scope of the claim to the portions of the specification which were elected, there is nothing requiring the "stabilizer support member" and the "concha stabilizer" to be limited to an "elongated" structure. *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); *Laryngeal Mask Co. v. Ambu A/S*, 618 F.3d 1367, 1372 (Fed. Cir. 2010) (holding that the claims cannot be limited to the preferred embodiment absent a clear intent to give a unique meaning different from its ordinary and customary meaning to one of skill in the art).

infringement is vacated and the issue is remanded for further proceedings.

### 2. The District Court Failed to Give Proper Consideration to Objective Evidence of Nonobviousness and Therefore Erred in Granting Aliph's Motion for Summary Judgment of Obviousness

This court reviews a district court's grant of summary judgment without deference. *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012). Summary judgment is appropriate if no genuine issues of material fact exist such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, courts review the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts." *Ryko Mfg. Co. v. Nu–Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991). "When the facts underlying an obviousness determination are not in dispute, we review whether summary judgment of invalidity is correct by applying the law to the undisputed facts." *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011).

Whether the claimed subject matter would have been obvious to an ordinarily skilled artisan at the time of the invention "is a question of law based on underlying questions of fact." *Green Edge Enters., LLC v. Rubber Mulch Etc. LLC,* 620 F.3d 1287, 1298 (Fed. Cir. 2010). The underlying factual inquiries include: (1) "the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill in the pertinent art"; and (4) relevant objective considerations, including "commercial success, long felt but un-

solved needs, [and] failure of others . . . ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17–18 (1966)) (internal quotation marks omitted). Obviousness must be proved by clear and convincing evidence. *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009). The burden of proof lies with the challenger, and this court has rejected any formal burden-shifting framework in evaluating the four *Graham* factors. *OSRAM*, 701 F.3d at 709. Thus, the inquiry on summary judgment is whether a jury applying the clear and convincing evidence standard could reasonably find, based on the evidence produced by the accused infringer, that the claimed invention was obvious. *See TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1339–40 (Fed. Cir. 2010).

The gravamen of the parties' dispute here involved whether a skilled artisan would have been motivated to combine certain prior art references, an issue that focuses heavily on the first and third *Graham* factors. *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1290 (Fed. Cir. 2006) ("[T]he motivation to combine requirement entails consideration of both the scope and content of the prior art and level of ordinary skill in the pertinent art aspects of the *Graham* test.") (citation and quotation marks omitted). The district court found that Lieber and Komoda disclosed "a receiver, ear cushion, stabilizer support and pad" and that any gap between these prior art elements and those recited, in relevant part, claims 1 and 11 of the '453 patent was bridged by "common sense." In particular, the district court determined that (1) the need for a stabilizing member that worked with the anatomy of an ear was a problem known in the art at the time of the invention, (2) there was a trend towards miniaturization of in-the-ear devices, and (3) miniaturizing the receiver described in Lieber and Komoda while pairing the receiver with a comfortable, adaptable, and stabilizing ear cushion as claimed in the '453 patent was a matter of common sense

for those skilled in the art at the time of the invention. Summ. J. Decision, 2012 WL 994636, at *10.

"An invention may be a combination of old elements disclosed in multiple prior art references." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1321 (Fed. Cir. 2005). Applying a flexible approach to the obviousness inquiry, the Supreme Court observed that common sense can be a source of reasons to combine or modify prior art references to achieve the patented invention. *KSR*, 550 U.S. at 420. Therefore, motivation to combine may be found explicitly or implicitly in market forces; design incentives; the "interrelated teachings of multiple patents"; "any need or problem known in the field of endeavor at the time of invention and addressed by the patent"; and the background knowledge, creativity, and common sense of the person of ordinary skill. *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328–29 (Fed. Cir. 2009) (quoting *KSR*, 550 U.S. at 418–21).

Although the obviousness analysis is somewhat flexible, a district court's conclusions with respect to obviousness must find support in the record. In determining that a person of skill in the art would have been motivated to combine the references at issue, the district court did not cite any expert testimony indicating that there was a motivation to combine. *See* Summ. J. Decision, 2012 WL 994636, at *10–11. Instead, the court determined that common sense would motivate a skilled artisan to combine the relevant references' teachings. *Id.* As we have said before though:

> "the mere recitation of the words 'common sense' without any support adds nothing to the obviousness equation." *Mintz v. Dietz & Watson*, 679 F.3d 1372, 1377 (Fed. Cir. 2012). Thus, we have required that [obviousness findings] grounded in "common sense" must contain explicit and clear reasoning providing some rational underpinning

why common sense compels a finding of obvious-
ness. *See KSR*, 550 U.S. at 418; *In re Kahn*, 441
F.3d 977, 988 (Fed. Cir. 2006) ("Rejections on ob-
viousness grounds cannot be sustained by mere
conclusory statements; instead, there must be
some articulated reasoning with some rational
underpinning to support the legal conclusion of
obviousness.").

*In re Nouvel*, 493 F. App'x 85, 92 (Fed. Cir. 2012). Where,
as here, the necessary reasoning is absent, we cannot
simply assume that "an ordinary artisan would be awak-
ened to modify prior art in such a way as to lead to an
obviousness rejection." *Id*. It is in such circumstances,
moreover, that it is especially important to guard against
the dangers of hindsight bias.

As a safeguard against "slipping into use of hindsight
and to resist the temptation to read into the prior art the
teachings of the invention in issue," we have required
courts to consider evidence of the objective indicia of
nonobviousness prior to making the ultimate determina-
tion of whether an invention is obvious. *Graham*, 383 U.S.
at 36; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530,
1538 (Fed. Cir. 1983) (objective considerations "may often
be the most probative and cogent evidence [of non- obvi-
ousness] in the record"). Failure to give proper considera-
tion to such evidence, as in this case, can be fatal because
"common sense" may not be so apparent in view of objec-
tive evidence of nonobviousness (*e.g.*, commercial success
and copying), particularly when all reasonable inferences
are drawn in favor of the patentee. *See Transocean Off-
shore Deepwater Drilling, Inc. v. Maersk Contractors USA,
Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) (reversing for
failure to consider the objective evidence of nonobvious-
ness and because there are genuine issues of material fact
remaining as to objective considerations).

Here, the district court concluded that the '453 patent was invalid as obvious before considering objective indicia of nonobviousness. According to the district court, "[i]t would have been obvious to one of ordinary skill in the art to modify the Lieber device to reduce the size of the in-the-ear receiver while pairing the receiver with a comfortable, adaptable ear cushion that stabilized the device with a flexible support member that invoked the ear anatomy to avoid the use of headsets and earhooks." Summ. J. Decision, 2012 WL 994636, at *11. The district court addressed Plantronics' objective evidence of nonbviousness—including copying and commercial success—only after reaching this conclusion. It stated: "Even accepting as true Plantronics' assertions on these secondary considerations, they do not save Plantronics from summary judgment here since such secondary considerations simply cannot overcome a strong prima facie case of obviousness." *Id.* To the extent the district court conducted a post hoc analysis of objective considerations, it was improper.

This court has consistently pronounced that all evidence pertaining to the objective indicia of nonobviousness must be considered before reaching an obviousness conclusion. *See, e.g., In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1076 (Fed. Cir. 2012). The significance of this fourth *Graham* factor cannot be overlooked or be relegated to "secondary status." *See id.* at 1079. As we explained:

> The objective considerations, when considered with the balance of the obviousness evidence in the record, guard as a check against hindsight bias . . . . In other words, knowing that the inventor succeeded in making the patented invention, a fact finder might develop a hunch that the claimed invention was obvious, and then construct a selective version of the facts that confirms that hunch. This is precisely why the Supreme Court explained that objective considerations might pre-

vent a fact finder from falling into such a trap, ob-
serving that objective considerations might serve
to resist the temptation to read into the prior art
the teachings of the invention in issue. And, it is
precisely why fact finders must withhold judg-
ment on an obviousness challenge until it consid-
ers all relevant evidence, including that relating
to the objective considerations.

*Id.* (citation and internal quotation marks omitted).[2]

Plantronics contends that it presented evidence of
copying and commercial success that at least raise genu-
ine issues of material fact underlying the ultimate conclu-
sion of obviousness. For example, Plantronics argues that
the design of Aliph's accused product began with Plant-
ronics' concha-style headset stabilizer, that it is undisput-
ed that Aliph initially installed Plantronics' stabilizer into
Aliph's headset, and from there, that Aliph copied Plant-
ronics' design. Plantronics also avers that it presented
evidence that the functional fit provided by the copied
design is critical to Aliph's headset, establishing a nexus
between the secondary evidence and the claimed inven-
tion. With the copied design, Plantronics argues that
Aliph enjoyed commercial success. In response, Aliph
contends that the evidence Plantronics presented was not
sufficient, but otherwise does little to rebut the evidence.
The district court's scant consideration of relevant objec-
tive evidence belies Aliph's argument.

---

[2]    Even in *Wyers v. Master Lock Co.*, which the dis-
trict court cited for support of its determination, this court
held the claims at issue obvious only after thoroughly
considering evidence related to commercial success and
copying. 616 F.3d 1231, 1246 (Fed. Cir. 2010).

The full extent of the district court's analysis was as follows: "In support of these secondary considerations, Plantronics relies, in part, upon the supplemental report of its expert, Barry Katz. Consistent with the evidentiary rulings above, I did not rely on this supplemental, unsworn expert report." Summ. J. Decision, 2012 WL 994636, at *11 n.11. The district court also stated: "I did not find Plantronics' evidence of secondary considerations, to the extent it was not in expert reports I did not consider, particularly persuasive. For example, I found nothing helpful in the Drysdale testimony . . . ." *Id.* at *11 n. 12. These statements, alone, fail to provide any meaningful analysis for this court's review. Nevertheless, Aliph asks that we reject Plantronics' objective considerations by finding in the first instance that Plantronics' evidence is not tied adequately to the full scope of the asserted claims. This argument is without merit because "[i]t is not our role to scour the record and search for something to justify a lower court's conclusions, particularly at the summary judgment stage." *OSRAM*, 701 F.3d at 707. "[T]his court must be furnished sufficient findings and reasoning to permit meaningful appellate scrutiny." *Id.* (citation and internal quotation marks omitted). The district court's opinion lacked such findings and reasoning.

Moreover, we cannot discern whether the district court, in this summary judgment context, drew all justifiable inferences in favor of Plantronics and found no disputed issues of material fact to support its holding with respect to obviousness. *Transocean*, 617 F.3d at 1305 (stressing that a court must draw all reasonable inferences in favor of a patent owner with respect to objective evidence of nonobviousness in the context of a motion for summary judgment of obviousness). In fact, when all of the factual disputes regarding the objective evidence are resolved in favor of Plantronics, we cannot hold that the claims would have been obvious as a matter of law. *See id.*

("Viewing the objective evidence of nonobviousness in a light most favorable to Transocean, we cannot hold that the claims would have been obvious as a matter of law."); *see also Simmons Fastener Corp. v. Ill. Took Works, Inc.*, 739 F.2d 1573, 1576 (Fed. Cir. 1984) (reversing the lower court, in part, because evidence of objective considerations, particularly commercial success, was extremely strong and entitled to great weight). The commercial success of Aliph's alleged copied product and the failure of attempts to combine the prior art elements before the '453 patent provide a genuine issue of material fact as to whether it would be "common sense" to combine the elements in the prior art to arrive at the claimed invention. Because evidence pertaining to objective considerations raises genuine issues of material fact, the district court's decision is reversed as to all the asserted claims in this case.[3]

CONCLUSION

For the foregoing reasons, the district court's decision is vacated in part, reversed in part, and remanded for

---

[3] The district court also erred to the extent it invalidated the unasserted claims of the '453 patent or to the extent the district court invalidated claims not at issue in the motion before it. *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012) (holding that the district court had no jurisdiction over the unasserted claims of the patent at issue because there was there was no case or controversy with respect to them); *OSRAM*, 701 F. 3d at 709 ("While a trial court may invalidate a claim sua sponte, where no motion regarding that claim is before it, it may not do so without prior notice to the non-movant and an opportunity for the non-movant to address such an unanticipated action."). Accordingly, to the extent the district court's final judgment invalidates patent claims not at issue, that determination is vacated.

further proceedings. To the extent the parties raise arguments based on issues the district court denied on summary judgment, we decline to address them here. *See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1344 (Fed. Cir. 2006) ("Denials of summary judgment are ordinarily not appealable, and we will not decide the issue of invalidity here."). Furthermore, we have considered all other remaining arguments and conclude that they are without merit.

### REVERSED IN PART, VACATED IN PART, AND REMANDED